**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DILIGENT ENTERPRISE MANAGEMENT, LLC,<br><br>                  Plaintiff,<br><br>- against -<br><br>AML GLOBAL ECLIPSE, LLC, DWC PINE INVESTMENTS I, LTD., ALAN KLAPMEIER, JAMES CARROLL, STEVE SERFLING, RJ SIEGLE, MIKE WYSE, and CAROL LAROTONDA,<br><br>                  Defendants. | Case No. 1: 23-cv-10924-VEC<br><br>[State Court Inedex No. 653523/2023] |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION TO REMAND THIS ACTION TO STATE COURT**

AKERMAN LLP
Darryl R. Graham
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND .............................................................................................. 3

STANDARD OF REVIEW ................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

A.     The Court Should Remand for Lack of Subject Matter Jurisdiction ................................. 8

    1.     Defendants' Notice of Removal Violates the Well-Pleaded Complaint Rule ........ 9

    2.     The Claims in the Complaint Neither Arise in Nor Relate to the Bankruptcy
    Case ....................................................................................................................... 10

B.     Removal barred by *Sterns v. Marshall*, 131 S.Ct. 2594 (2011)......................................... 14

C.     The Forum Selection Clauses Require Remand .............................................................. 15

D.     Even if the Court has Jurisdiction (it does not), the Court should Abstain ...................... 16

    1.     Mandatory Abstention Requires Remand.............................................................. 16

    2.     Permissive Abstention Also Favors Remand......................................................... 18

E.     The Court should Award Plaintiff its Attorneys' Fees ..................................................... 19

CONCLUSION......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
  676 F. Supp. 2d 285 (S.D.N.Y. 2009) ..................................................................................7

*Baker v. Simpson*,
  613 F.3d 346 (2d Cir. 2010) ...........................................................................................10

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ..............................................................................................8, 9, 20

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ......................................................................................................12

*Certain Underwriters at Lloyd's London - Syndicate 1861 v Daileader*,
  22 CIV. 2038 (PGG), 2023 WL 185518 (SDNY Jan. 13, 2023) ...............................9

*Diligent Enterprise Management, LLC v. AML Group Eclipse, et al.*,
  Index Number 653523/2023 ................................................................................. passim

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*,
  130 B.R. 405 (S.D.N.Y. 1991) ......................................................................................10

*Fax Telecommunicaciones, Inc. v. AT&T*,
  138 F.3d 479 (2d Cir. 1998) ...........................................................................................8

*Fried v. Lehman Bros. Real Estate Associate III, L.P.*,
  46 B.R. 706 (S.D.N.Y. 2013) ........................................................................................17

*GE Cap. Corp. v. Por-Fac Coop., Inc.*,
  No. 01-CIV. 10215 LTS JCF, 2002 WL 1300054 (S.D.N.Y. June 11, 2002) .........13

*GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*,
  No. 18-cv-7555, 2019 WL 2008575 (S.D.N.Y. May 7, 2019) .................................11

*Geron v. Schulman (In re Manshul Construction Corp.)*,
  225 B.R. 41 (Bankr. S.D.N.Y. 1998) ............................................................................12

*Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*,
  505 F.3d 237 (3d Cir. 2007) ..........................................................................................10

*Greenidge v. Mundo Shipping Corp.*,
  60 F. Supp. 2d 10 (E.D.N.Y. 1999) ..............................................................................21

*ICICI Bank Ltd. v Essar Glob. Fund Ltd.*,
    565 BR 241 (S.D.N.Y. 2017)......................................................................................16

*In re Cathedral of the Incarnation*,
    90 F.3d 28 (2d Cir. 1996)..........................................................................................16

*In re Coudert Bros.*,
    2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ...........................................................11

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992).......................................................................................10

*In re Leco Enters.*,
    144 B.R. 244 (S.D.N.Y. 1992)...................................................................................10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007).........................................................................................7

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    929 F. Supp. 174 (S.D.N.Y. 1996) ..............................................................................7

*In re: ONE Aviation Corp., et al.*,
    Case No. 18-12309 (CSS) (Bankr. D. Del.).......................................................passim

*In re Turner*,
    724 F.2d 338 (2d Cir. 1983).......................................................................................12

*In re U.S. Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999).......................................................................................11

*Izquierdo v. 34th St. Diner, Inc.*,
    2022 WL 72303 (S.D.N.Y. Jan. 7, 2022) ....................................................................7

*Joseph & Kirschenbaum LLP v. Tenenbaum*,
    No. 19-cv-5577, 2020 WL 242374 (S.D.N.Y. Jan. 16, 2020) ..................................18

*Kerusa Co. LLC v W10Z/515 Real Estate Ltd. P'ship*,
    No. 04 Civ. 708 (GEL), 2004 WL 1048239 (S.D.N.Y. May 7, 2004) .............18, 19

*Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P.*,
    487 B.R. 158 (S.D.N.Y. 2013)...................................................................................12

*Lupo v. Human Aff. Int'l Inc.*,
    28 F.3d 269 (2d Cir. 1994)...........................................................................................7

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)...........................................................................................8

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)..................................................................................................20

*Morgan Guar. Trust Co. v. Republic of Palau*,
971 F.2d 917 (2d Cir. 1992)......................................................................................20

*Mt. McKinley Ins. Co. v. Corning Inc.*,
399 F.3d 436 (2d Cir. 2005)......................................................................................16

*NEMSA Establishment, S.A. v. Viral Testing Systems Corp.*,
1995 WL 489711 (S.D.N.Y. Aug. 15, 1995).............................................................18

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984).......................................................................................12

*Parmalat Cap. Fin. Ltd. Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011 ..........................................................................10, 11, 17

*Post Investors LLC v. Gribble*,
No. 12 Civ. 4479 (ALC)(AJP), 2012 WL 4466619 (S.D.N.Y. Sept. 27, 2012) .....................15

*Shamoun v. Peerless Importers, Inc.*,
No. 03 Civ. 1227 (NG), 2003 WL 21781954 (E.D.N.Y. Aug 01, 2003)................................20

*Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*,
285 B.R. 822 (S.D.N.Y. 2002)...................................................................................15

*Sterns v. Marshall*,
131 S.Ct. 2594 (2011)............................................................................................3, 14

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009)...................................................................................................12

*Wachovia Bank N.A. v. Encap Golf Holdings, LLC*,
690 F. Supp. 2d 311 (S.D.N.Y. 2010)........................................................................15

*Williams v. Int'l Gun-A-Rama*,
416 F. App'x 97 (2d Cir. 2011) .................................................................................20

*Worldcom Inc. Sec. Litig.*,
293 B.R. 308 (S.D.N.Y. 2003)...................................................................................16

## Statutes

28 U.S.C. § 157...............................................................................................................14

28 U.S.C. § 157(b)(2) ......................................................................................................10

28 U.S.C. § 157(b)(2)(C) .................................................................................................14

28 U.S.C. § 1334 ................................................................................................8, 10, 17

28 U.S.C. § 1334(b) ....................................................................................8, 9, 16, 17, 20

28 U.S.C. § 1334(c)(1) ...........................................................................................16

28 U.S.C. § 1334(c)(2) ........................................................................11, 16, 17, 18

28 U.S.C. § 1447(c) ...............................................................................................19

28 U.S.C. § 1452(a) ..................................................................................................8

28 U.S.C. § 1452(b) ...............................................................................................16

**Rules**

CPLR 304(a) ..............................................................................................................3

**Other Authorities**

16 J. Moore, et al., Moore's Federal Practice § 107.15[8][b] (3d ed. 2004) ...................................9

## PRELIMINARY STATEMENT

Plaintiff, Diligent Enterprise Management, LLC,[1] brought this action in New York State Supreme Court, styled *Diligent Enterprise Management, LLC v. AML Group Eclipse, et al.*, Index Number 653523/2023 (the "State Case").  [ECF No. 1-1].  Plaintiff's Complaint (the "Complaint"), which is comprised of 146 paragraphs of factual and legal allegations, exclusively asserts state law claims against AML Group Eclipse, LLC ("AML"), DWC Pine Investments I, LTD. ("DWC"), Alan Klapmeier ("Klapmeier"), James Carroll ("Carroll"), Steve Serling ("Serling"), RJ Siegle ("Siegle"), Mike Wyse ("Wyse"), and Carol LaRatonda ("LaRatonda") (collectively, the "Defendants").

Specifically, Plaintiff seeks a final judgment against the Defendants for various New York common law claims, including claims for breach of various related contracts (all of which apply New York law and include New York forum selection clauses), tortious interference with respect to contract, civil conspiracy, fraudulent inducement and fraudulent misrepresentation. The determination of these claims is limited to the interpretation of contract under state law and the application of state law, not federal law, and no federal claims are asserted.  In short, the claims set forth in the State Case arise exclusively out of state law.

Nevertheless, the Defendants jointly removed the State Case to the Southern District of New York on the grounds that the Complaint purportedly "arises in or relates to" the bankruptcies of *non-party* debtor ONE Aviation Corporation ("One Aviation") and eleven *non-party* affiliated entities (the "Affiliates"), which is pending (yet poised to be closed) in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") and styled under the

---

[1] Citiking International US LLC ("Citiking") entered into the operative agreements attached to the Complaint, but it subsequently assigned its claims to Plaintiff on June 22, 2023.  [ECF No. 1-1 at ¶ 1].  For the sake of ease, reference to "Plaintiff" herein includes Citiking.

74770467

consolidated matter, *In re: ONE Aviation Corp., et al.*, Case No. 18-12309 (JKS) (the "Bankruptcy Case").  [ECF No. 1] (hereinafter, the "Notice").

In the Notice, Defendants plainly fail to carry their burden to establish federal subject matter jurisdiction under Title 11, nor do they make a meaningful attempt.  Instead, the Defendants cursorily lift certain bankruptcy related language from the Complaint and then cite to a handful of filings in the Bankruptcy Case – none of which are attached to (or clearly identified in) the Notice – and then assert that based on those bankruptcy references, the State Case must "arise in or relate to" the Bankruptcy Case.  Yet, Defendants' expansive view of bankruptcy jurisdiction is contrary to the law.  The Defendants are wrong, fail to sustain their burden, and remand should be granted for several reasons.

*First*, as the well-pleaded complaint doctrine dictates, removal must be predicated on grounds set forth in the Complaint.  Here, the Complaint is limited to state law claims arising from breaches of contract that pre-dated the Bankruptcy Case (or relate to the pre-petition contracts) and fraud claims independent of the Bankruptcy Case, all of which are plead against non-debtors.  While the Bankruptcy Case may provide a factual predicate or background regarding the state law claims in the Complaint, none of the claims actually "arise in" or "relate to" Title 11, which each jurisdictional prong contains its own criteria that the Defendants have failed to satisfy.  Indeed, as to the fraud claims, the Notice is silent as to how they confer federal jurisdiction and, thus, by implication Defendants concede there is none.

*Second*, the State Case is neither a "core" proceedings nor does it relate to the administration of the estate in the Bankruptcy Case because it asserts pre-petition contract claims.  Likewise, the state law claims would not "only exist in a bankruptcy proceeding," which forecloses the "arises under" and "arises in" prongs for jurisdiction over a "core" proceeding,

especially because the Notice contains no argument otherwise.  Further, the State Case neither "relates to" the Bankruptcy Case nor is it a "non-core" proceeding because the claims would have no conceivable impact on the Bankruptcy Case, especially because the debtor is not a party to the State Case, the liquidation of the estate's limited assets is effectively complete, and the estate's closure is imminent, as discussed further below.

*Third*, the Supreme Court's ruling in *Sterns v. Marshall*, 131 S.Ct. 2594 (2011) establishes that federal bankruptcy courts cannot adjudicate non-core, state law causes of action asserted by a non-debtor party against non-debtor parties.

*Fourth*, Plaintiff and DWC entered into at several contracts that include forum selection clauses that confine litigation to the courts of New York, which must be respected.  Further, Plaintiff properly commenced the State Case in New York Supreme Court and therefore that decision renders the clauses "mandatory."

*Fifth*, even if the Court were to conclude that federal jurisdiction exits (it should not), the factors relating to permissive abstention (applicable to the "arises in" prong) and mandatory abstention (applicable to the "related to" prong) compel the Court to abstain from exercising jurisdiction and remanding the State Case back to the New York Supreme Court.

## RELEVANT BACKGROUND

1.      On July 20, 2023, Plaintiff commenced the State Case in New York Supreme Court against the Defendants by filing a Summons with Notice, pursuant to CPLR 304(a). [ECF No. 1-1, p. 2-3].  Thereafter, on Friday, November 17, 2023, Plaintiff served five (5) Defendants with the Complaint, with Defendants Wyse and DWC served with the Complaint on Monday, November 20, 2023.  While the latter Defendants dispute service, they all jointly filed the Notice on December 15, 2023.  [ECF No. 1].

2.      In the Complaint, Plaintiff alleges that the various non-debtor Defendants breached certain pre-petition contracts, engaged in tortious interference with contract, civil conspiracy, and fraudulent conduct.

3.      With respect to the fraud claims, Plaintiff asserts claims relating to misrepresentations made to induce certain funding and compensation to the individual Defendants, certain IP property rights, and a trip to Israel regarding a potential joint venture opportunity, all of which were false and damaged Plaintiff.   [ECF No. 1-1 ¶¶ 120-146]. Defendants' Notice fails to reference or otherwise discuss the fraud claims, nor does the Notice demonstrate any basis for federal subject matter jurisdiction relating to those state law claims. [ECF No. 1 ¶¶ 20-24].

4.      As for the contract claims, they relate to the purchase, sale, and assignment of certain debts that One Aviation owed to DWC, and which DWC sold to Plaintiff.  [ECF No. 1-1].  The One Aviation debtor and Affiliates are not parties to the Complaint.  *Id.*  As alleged in the Complaint, Plaintiff and DWC entered into those contracts between November 10, 2017 and July 10, 2018, all of which predated the Bankruptcy Case.[2]  *Id.* ¶¶ 15-31.

5.      The Continuing Obligation Agreement ("COA") and Letter Agreement ("LA"), both dated July 10, 2018, contain an identical forum selection clause that states, in relevant part:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving regard to conflicts of law principles.  Each party submits to the jurisdiction of the federal or state courts located in the Borough of Manhattan, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts.

*See* COA ¶ 9 (Compl. Ex. 6) *and* LA ¶ 7 (Compl. Ex. 7).

---

[2] The Letter Agreement was executed post-petition, but it directly relates to the pre-petition Second PSA.  [ECF No. 1-1 ¶¶ 37-39].

6.      Also, the First PSA (Exhibit 1 to the Complaint), the related Assignment (Exhibit 2 to the Complaint), the Intercreditor Agreement (Exhibit 3 to the Complaint), the Second PSA (Exhibit 4 to the Complaint), and the related Assignment (Exhibit 5 to the Complaint) each reference that certain Credit and Security Agreement, dated July 20, 2012 (the "Credit Agreement"), and either explicitly or implicitly incorporate its terms into them.  *See* Compl. at Ex 1 p. 1, ¶  ; Ex. 2 p. 1 ("subject to and in accordance with the … Credit Agreement"), § 1.2 ("Assignee … shall be bound by the provisions of the Credit Agreement"); Ex. 3 ¶ 6(e) (incorporating, among other things, Section 13 of the Credit Agreement "*(Choice of Law and Venue, Jury Trial Waiver)*"; Ex. 4 p. 1 ¶ 1; Ex. 5 p. 1 ("subject to and in accordance with the … Credit Agreement"), § 1.2 ("Assignee … shall be bound by the provisions of the Credit Agreement").

7.      Section 13(b) of the Credit Agreement includes a forum selection clause that states, in relevant part:

> ALL ACTIONS OR PROCEEDING ARISING IN CONNECTION WITH THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS MAY BE TRIED AND LITIGATED IN THE STATE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, FEDERAL COURTS LOCATED IN THE COUNTY OF NEW YORK, STATE OF NEW YORK … EACH PARTY HERETO WAIVES, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION 13(b).

*See* Credit Agreement § 13(b), which is attached as Exhibit 1 to the Declaration of Darryl Graham, Esq. ("Graham Decl.") filed with Plaintiff's Motion to Remand.  [Graham Decl. ¶ 5, Ex. 1 (capitalization in original)].

8.      On October 9, 2018, One Aviation and the Affiliates filed for bankruptcy under Chapter 11 of the Bankruptcy Code.  [ECF No. 1-1 (Compl.) ¶ 45].

9.      Thereafter, while the Bankruptcy Case was pending, Defendant DWC, with assistance from AML, breached the contracts by failing to provide Plaintiff with the required Right of First Refusal provided under the Intercreditor Agreement, *id.* ¶ 94, Ex. 3; failing to deliver and assign to Plaintiff certain loans (the "Second Tranche Loans"), as provided in the LA, *id.* ¶ 97, Ex. 7; and failing to assign the Second Tranche Loans back to Plaintiff or refunding Plaintiff for the Second Tranche Loans, in violation of the COA, *id.* ¶¶ 100-103, Ex. 6, among other breaches.

10.     Further, the Complaint alleges that the non-party debtor filed various motions in the Bankruptcy Case – none of which serve as a predicate to any of the Complaint's claims – but that Defendant DWC (and by extension) Defendant AML were bound by the contracts to afford Plaintiff certain rights, which, as discussed above, they breached "outside the purview of [Plaintiff] and the Bankruptcy Court." *Id.* ¶¶ 47-64, 75.  Based on that misconduct, and AML's subsequent actions, Plaintiff was damaged. *Id.* ¶¶ 78-119.

11.     On February 18, 2021, the Bankruptcy Court granted the motion to convert One Aviation's bankruptcy to Chapter 7. *Id.* ¶ 87.  Notably, in support of conversion, the motion (filed more than three years ago) confirmed that the "administratively insolvent cases should convert to chapter 7 to cut off further administrative fee burn," among other reasons. *See* Graham Decl. ¶ 5, Ex. 2 (attaching, as Exhibit 2, the Conversion Motion).

12.     On December 26, 2023, Defendant AML filed a Statement in the Bankruptcy Case alerting the Bankruptcy Court of the State Action, its removal, and the potential transfer to the Bankruptcy Case.  In that filing, AML acknowledged that insofar as this case is transferred to Delaware Bankruptcy Court (which Plaintiff will oppose), such transfer "may impact the

potential closure of the Bankruptcy Case[].”  *See* Graham Decl. ¶ 6, Ex. 3. (attaching, as Exhibit 3, AML’s Statement).

13.     To that end, on January 3, 2024, the Bankruptcy Court entered an Order of Distribution outlining the distribution of the remaining assets of the bankruptcy estate, which, once completed, will have a zero balance.  *See* Graham Decl. ¶ 7, Ex. 4. (attaching, as Exhibit 4, the Order of Distribution).

14.     The Court should remand the State Case because it asserts state law claims only, includes no claims against the Debtor or its estate, and this Court otherwise lacks subject matter jurisdiction and (to the extent transferred to Bankruptcy Court) constitutional authority to adjudicate the State Case.  Alternatively, this Court should exercise its discretion and promote judicial economy by abstaining from adjudicating the State Case.

## <u>STANDARD OF REVIEW</u>

The Defendants bear the burden of establishing that they properly removed the State Action. *See In re Methyl Tertiary Butyl Ether (“MTBE”) Prods. Liab. Litig.,* 488 F.3d 112, 124 (2d Cir. 2007); *Izquierdo v. 34th St. Diner, Inc.*, 2022 WL 72303 (S.D.N.Y. Jan. 7, 2022) (remanding case back to state court because the moving party did not meet its burden).  Courts must review only the “jurisdictional facts” in the Notice of Removal and “‘resolv[e] any doubts against removability.’” *MTBE,* 488 F.3d at 124 (alteration in original and citation omitted).  On a remand motion, courts “construe all disputed questions of fact and controlling substantive law in favor of the plaintiff.”  *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996).  “Any doubts regarding the propriety of removal are resolved in favor of remand, and ‘federal courts construe the removal statute narrowly.’” *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (quoting *Lupo v. Human Aff. Int’l Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

In addition, "[t]he presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule." *Marcus v. AT&T Corp.,* 138 F.3d 46, 52 (2d Cir. 1998).  Under that rule, "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, and only when [the] plaintiff's well-pleaded complaint raises issues of federal law." *Marcus,* 138 F.3d at 52 (internal citations omitted). "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecommunicaciones, Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998) (citation omitted).  The well-pleaded complaint rule thereby "makes the plaintiff the master of the claim." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).

## ARGUMENT

### A.    The Court Should Remand for Lack of Subject Matter Jurisdiction

The Defendants removed the State Case to this Court predicated on the bankruptcy removal statutes, which provide for removal of claims to federal court if the state court action is "arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b); 28 U.S.C. 1452(a) ("A party may remove any claim … to the district court…, if such district court has jurisdiction of such claim … under section 1334 of this title.").  *See* Notice ¶ 25.

To support removal, Defendants largely ignore the Complaint and instead discuss various matters relating to the Bankruptcy Case and then provide four bases for why the State Case should be in federal court: i) that the tortious interference claim purportedly relates to collusion regarding the "AML Eclipse Sale Motion"; ii) that AML and DWC conspired "through the bankruptcy process" to purchase certain assets below fair market value; iii) that DWC breached various contracts regarding loans related to non-party debtor One Aviation; and iv) that the Summons with Notice referenced that the various state law claims arose from conduct that occurred during One Aviation's bankruptcy proceeding. [Notice ¶¶ 21-24].

However, putting aside that these bases are either misleading, inaccurate, or irrelevant, the Notice fails to cite any legal authority demonstrating why those grounds establish federal jurisdiction over the State Case. That is because Defendants cannot and the Notice fails to satisfy their burden.

1.   *Defendants' Notice of Removal Violates the Well-Pleaded Complaint Rule*

Based on the "well-pleaded complaint rule," the basis for jurisdiction is limited to the allegations and claims in the Complaint. *Caterpillar,* 482 U.S. at 392. Here, however, the Notice predicates jurisdiction on matters beyond the Complaint, mainly by citation to the Bankruptcy Case, which plainly suggests various *defenses* to the State Case Complaint, rather than jurisdiction arising from the claims themselves. *See* Notice ¶¶ 13-16. This is because Defendants cannot establish jurisdiction based on the Complaint, which alleges state law claims against and between non-debtors only. *See, e.g., Certain Underwriters at Lloyd's London - Syndicate 1861 v Daileader*, 22 CIV. 2038 (PGG), 2023 WL 185518, at *6 (SDNY Jan. 13, 2023) (Applying the well-pleaded complaint rule to the "arising under" provision of 28 U.S.C. § 1334(b), the court held that the claims did not "arise under" bankruptcy law, and "[t]hus, even if there [was] a defense to the action involving substantive statutory bankruptcy law, that [was] not a basis for removal."); 16 J. Moore, et al., Moore's Federal Practice § 107.15[8][b], p. 107–133 (3d ed. 2004) ("Bankruptcy removal jurisdiction is subject to the well-pleaded complaint rule, which requires that the basis of federal jurisdiction be discernible from matters alleged in the complaint"). Because the Notice of Removal relies on matters not "alleged in the complaint", removal jurisdiction is lacking and remand is warranted.

2.      *The Claims in the Complaint Neither Arise in Nor Relate to the Bankruptcy Case*

Broadly speaking, actions that "arise under" Title 11 involve claims "predicated on a right created by a provision of Title 11." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).  A case "arises in" Title 11 when the claims "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010); *see also Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (citation omitted).  Lastly, a case is "related to" a bankruptcy action where the action's "outcome might have any conceivable effect on the bankruptcy estate."  *Parmalat Cap. Fin. Ltd. Bank of Am. Corp. ("Parmalat I")*, 639 F.3d 572, 579 (2d Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)).

These prongs directly correspond to the question of "core" or "non-core" proceedings, such that those actions that "arise under" or "arise in" Title 11 are considered "core" while an action that only "relates to" a case under Title 11 is a "non-core" proceeding. *Baker*, 613 F.3d at 350; *In re Leco Enters.*, 144 B.R. 244, 248 (S.D.N.Y. 1992) ("[T]he core proceedings listed in 28 U.S.C. § 157(b)(2) are essentially identical to the claims defined as "arising in" and "arising under" proceedings in 28 U.S.C. § 1334").  Clearly, none of the claims set forth in the Complaint qualify as "core" proceedings delineated in 28 U.S.C. § 157(b)(2), nor has Defendants suggested otherwise, and thus there is no "arising under" jurisdiction.  [ECF No. 1]. *See generally* Notice.[3]

---

[3] As discussed below, the core versus non-core dichotomy is particularly relevant because non-core "related to" claims are subject to mandatory abstention if the elements of § 1334(c)(2) are satisfied.  *Parmalat I*, 639 F.3d at 579-80.  Pursuant to that doctrine, "the district court shall

As for the "arise in" prong, Defendants have failed to carry their burden to demonstrate that the state law contract and fraud claims "would have no existence outside of the bankruptcy" proceeding. *GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*, No. 18-cv-7555, 2019 WL 2008575, at *6 (S.D.N.Y. May 7, 2019). As for the fraud claims in Counts VI to XI, the Defendants make no argument whatsoever, let alone discuss, how or why those claims "arise in" or would not exist outside of the Bankruptcy Case. Further, other than the Letter Agreement, all of the contracts that give rise to the breach of contract claims were entered into in November 2017 and June 2018, which pre-dated the Bankruptcy Case filed in October 2018. Because the contracts were formed pre-petition they cannot as a matter of law "arise in" the Bankruptcy Case. *See, e.g., In re Coudert Bros.*, 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011) ("Where a contract sued upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws."); *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) ("The critical question in determining whether a contractual dispute is core by virtue of timing is not whether the *cause of action* accrued post-petition, but whether the *contract* was formed post-petition.").

Although the Letter Agreement was executed post-petition on July 25, 2019, it was between non-debtors regarding their pre-petition contractual agreements over the purchase of certain debts of One Aviation that DWC owned pre-petition and related back to the Second PSA from July 10, 2018. [ECF No. 1-1 ¶¶ 37-39]. Moreover, Plaintiff's breach of contract claim relating to the Letter Agreement does not involve the debtor One Aviation (or its Affiliates), nor does it involve the interpretation, enforcement, or construction of any bankruptcy order, as Plaintiff's Complaint demonstrates. *But see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151

---

abstain from hearing such proceeding if an action ... can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

(2009) ("[A]s the Second Circuit recognized[ ] ... the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013). ("'Arising in' claims may include matters involving the enforcement or construction of a bankruptcy court order."). Here, because State Case Complaint asserts claims based on pre-petition contracts, against non-debtor parties, that do not seek the enforcement, interpretation or construction of any bankruptcy orders, and (as state law claims) would exist outside of bankruptcy, the State Case does not "arise in" the Bankruptcy Case and Defendants have failed to establish this prong.

Finally, the Defendants have also failed to establish the "related to" prong because the outcome of the State Case will have no "conceivable effect" on the debtor's estate, nor does the Notice demonstrate one. *See generally* [ECF No. 1]. To establish that a dispute between non-debtors has a "conceivable effect" on the bankruptcy estate, the dispute must "affect how much property is available for distribution to the creditors of the bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities." *Geron v. Schulman (In re Manshul Construction Corp.)*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). However, a "bankruptcy court's 'related to' jurisdiction cannot be limitless." *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983) ("… Congress must have intended to put some limit on the scope of 'related to' jurisdiction."); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984) (finding that, absent an "automatic creation of liability" against the bankrupt, the underlying action was too far removed from the bankruptcy to be related).

None of Defendants' four "bases" to support removal demonstrate what impact the State Case will conceivably have on the Bankruptcy Case. For starters, the State Case does not

involve the debtor or its estate and the claims are predicated on contract and fraud claims against third-parties, which is insufficient to establish the "related to" prong.  *See GE Cap. Corp. v. Por-Fac Coop., Inc.*, No. 01-CIV. 10215 LTS JCF, 2002 WL 1300054, *2 (S.D.N.Y. June 11, 2002) ("The removed claims are asserted against the Debtor's affiliates, rather than against the Debtor, are premised on allegations of fraud and misuse of the corporate form by those affiliates and/or their principles.").

Next, the debtor's bankruptcy was converted from Chapter 11 to Chapter 7 on February 18, 2021 and has since been liquidated to nothing.  *See* Notice ¶ 17; Graham Decl. at Ex. 4 (bankruptcy court ordered the Chapter 7 Trustee to distribute the entirety of the remaining balance of the estate ($865,374.49) and directed the filing of a report of "zero balances" in the Trustee's Final Report and Account.).  None of the proceeds were directed to the debtor, nor does Plaintiff seek recovery of or otherwise seeks to impact the final administration of those funds or the imminent closure of the bankruptcy estate.  *See* Graham Decl. at Ex. 3 (AML recognizing the anticipated closure of the estate).  Instead, Plaintiff seeks damages for contract and fraud claims independent of the administration of the Bankruptcy Case and Plaintiff seeks to recover those damages directly from those non-debtor Defendants.  Based on the this, and absent any argument from the Defendants otherwise in their Notice, the State Case will not have any "conceivable effect" on the bankruptcy estate and thus Defendants have failed to establish that the State Case is sufficiently "related to" the Bankruptcy case to justify the Court taking jurisdiction.

**B.      Removal barred by *Sterns v. Marshall*, 131 S.Ct. 2594 (2011)[4]**

The Supreme Court's decision in *Stern v. Marshall* also prevents the Bankruptcy Court from adjudicating the non-core, state law causes of action asserted by a non-debtor party against non-debtor parties as set forth in the Complaint.  *See generally*, 131 S.Ct. at 2620.

In *Stern*, the Supreme Court determined that although Congress provided bankruptcy courts with statutory authority to enter judgments on counterclaims to proofs of claim filed against a debtor's estate pursuant to 28 U.S.C. §157(b)(2)(C), Article III of the Constitution prevents a bankruptcy court from adjudicating affirmative claims brought by a bankrupt debtor against a creditor if those claims do not assert rights to relief under federal bankruptcy law that will be resolved in the process of adjudicating the creditor's proof of claim against the estate. *See id*. at 2601.

Based on that paradigm, the Supreme Court further held that common-law claims brought by a debtor against its creditor could not be determined by the bankruptcy court, even if the common-law claims raise issues that overlap with what must be resolved in ruling on allowing or disallowing the creditor's proof of claim.  *See id.* at 2617-18.

Because *Stern* limits the authority of a bankruptcy court to enter final judgments where the debtor is a party and where the very cause of action is expressly included as a core proceeding under 28 U.S.C. § 157, circumstances not present in the instant case, there is no conceivable basis whereby the bankruptcy court may adjudicate a state law tort claim where the

---

[4] Plaintiff acknowledges that this Court can adjudicated non-core claims.  However, Defendants' stated goal is to transfer to Delaware Bankruptcy Court, which *Sterns* prevents and thus favors remand.  Moreover, Defendants submit that transfer to the Delaware Bankruptcy Court is warranted because of its "familiarity with the events underlying the Removed Action." *See* Notice ¶ 26.  It should be noted that the "familiarity" claim is questionable because U.S. Bankruptcy Judge Christopher S. Sontchi, who presided over this matter at all relevant times through conversion to Chapter 7, retired and the Bankruptcy Case was transferred to U.S. Bankruptcy Judge J. Kate Stickles on February 25, 2022.  *See* Graham Decl. ¶ 8, Ex. 5.

Debtor is not a party to the causes of action and where there is no defined core proceeding at issue.

## C.   The Forum Selection Clauses Require Remand

The State Case asserts claims relating to, among others, breach of contract and tortious interference with contract against AML and/or DWC relating to the Intercreditor Agreement (Exhibit 3 to the Complaint; Counts I, IV, and V), the Letter Agreement (Exhibit 7 to the Complaint; Count II), and the Continuing Obligations Agreement (Exhibit 6 to the Complaint; Count III).  *See* Compl. ¶¶ 19, 24, 37, 90-119.

In each of those Agreements, Plaintiff and DWC agreed to submit to the jurisdiction of the courts of New York located in "the Borough of Manhattan, State of New York" and "agree[d] that any litigation relating to th[e] Agreement[s] shall be brought only in such courts" and that objection to venue is waived if asserted under Section 13(b) of the Credit Agreement, which is incorporated in the Intercreditor Agreement.  *See* Relevant Background ¶¶ 5-7, *supra.* Because, as discussed above, the State Case is (at most) a "non-core" proceeding, forum selection clauses are enforced.  *See Wachovia Bank N.A. v. Encap Golf Holdings, LLC,* 690 F. Supp. 2d 311, 329–31 (S.D.N.Y. 2010); *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC),* 285 B.R. 822, 835–37 (S.D.N.Y. 2002).

Based on the repeated confirmation of DWC and Plaintiff that any dispute related to the State Case should be litigated in New York, including its state courts, and due to Plaintiff's decision to commence the State Case in the Supreme Court in the County of New York, the parties are bound by this choice and the Court should enforce the forum selection clause.  *See Post Investors LLC v. Gribble*, No. 12 Civ. 4479 (ALC)(AJP), 2012 WL 4466619, at *4 (S.D.N.Y. Sept. 27, 2012) (remanding case removed based on a bankruptcy proceeding because

the forum selection clause provided the "choice of either state or federal court located in New York county" and "a party's selection of state court becomes mandatory and bars removal to federal court"); *ICICI Bank Ltd. v Essar Glob. Fund Ltd*., 565 BR 241, 252 (S.D.N.Y. 2017) ("Based upon their plain meaning, the Court concludes that the [forum selection] clauses at issue here are mandatory or, more precisely, ***became mandatory once Plaintiff had filed suit in one of the designated fora*** [i.e., New York state court].") (emphasis added). Consequently, the forum selection clauses require that this action be remanded to state court.

**D.     Even if the Court has Jurisdiction (it does not), the Court should Abstain**

Apart from the jurisdictional analysis, due to the fact that "jurisdiction" under 28 U.S.C. ¶ 1334(b) is "not exclusive", and thus depending on the circumstances, the doctrines of permissive or mandatory abstention apply and both favor (or require) remand to state court. *See* 28 U.S.C. ¶ 1334(c)(1) (permissive abstention); 28 U.S.C. ¶ 1452(b) (equitable abstention); 28 U.S.C. 1334(c)(2) (mandatory abstention). The analysis regarding the former two abstention doctrines is identical. *Worldcom Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Where mandatory abstention is determined, remand pursuant to 28 U.S.C. § 1452(b) is appropriate. *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005); *see also In re Cathedral of the Incarnation*, 90 F.3d 28, 32-34 (2d Cir. 1996) (holding that Section 1452(b) prohibits appellate review of a decision to remand based on mandatory abstention).

*1.     Mandatory Abstention Requires Remand*

The doctrine of mandatory abstention applies if the State Case is "related to" the Bankruptcy Case. 28 U.S.C. 1334(c)(2). While Plaintiff contends the Defendants have failed to establish "related to" jurisdiction, if they did, the Court must still abstain and remand to state court. The six factors that must be satisfied for mandatory abstention are: (1) the motion to

abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court.  *See Fried v. Lehman Bros. Real Estate Associate III, L.P.*, 46 B.R. 706, 711 (S.D.N.Y. 2013).

Plaintiffs have established each of these elements.  The motion to remand and (in the alternative) abstention is timely, per the Court's Order [ECF No. 13]; the State Case is based on state law claims, *see* Complaint; the State Case is (at most) "related to" the Bankruptcy Case, as discussed above; Defendants' sole basis for federal jurisdiction is § 1334(b), *see* [ECF No. 1]; and, the State Case was commenced in state court.  *Id.*

As for the latter element, the New York Supreme Court can timely adjudicate the State Case.  The Second Circuit has identified "[f]our factors" when "evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat I*, 639 F.3d at 580.

The factors are either neutral or favor abstention to state court.  Undoubtedly, both New York state and federal courts are busy, but there is no basis to conclude that the state courts are materially busier than federal court sufficient to find that they could not timely resolve the State Case.  Also, because this is a "non-core" case, the "bankruptcy courts can only issue proposed findings of fact and law", which, unlike state court, would require an additional objections period whereas the state court can resolve the dispute by summary judgment.  *See Joseph &*

*Kirschenbaum LLP v. Tenenbaum*, No. 19-cv-5577, 2020 WL 242374, at *5 (S.D.N.Y. Jan. 16, 2020).  The State Case is not complex as it raises garden-variety breach of contract and fraud claims.  *See Worldview Ent.*, 611 B.R. at 19 (explaining that "federal judges have no special expertise" dealing with "contract claims based on New York state law").  Finally, the bankruptcy proceeding is all but closed with the Bankruptcy Court issuing an Order of Distribution on January 3, 2024 that will result in the distribution of any remaining funds in the estate.  *See* Graham Decl. ¶ 7, Ex. 4.  To the extent this case is ultimately transferred to the Bankruptcy Case, it would needlessly burden the estate that is about to close and that is without any funds, which AML acknowledged.  *Id.* p. 3 (noting that the "transfer of the State Court Action to [the Bankruptcy] Court may impact the potential closure of the Bankruptcy Cases.").

Because Plaintiff has satisfied these factors, abstention is required under § 1334(c)(2) insofar as the Court finds that the "related to" prong is satisfied.

### 2.   *Permissive Abstention Also Favors Remand*

In evaluating permission and equitable abstention, several factors are relevant, including: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to trial by jury; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources and the lessened possibility of inconsistent results. *Kerusa Co. LLC v W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708 (GEL), 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004) (citing *NEMSA Establishment, S.A. v. Viral Testing Systems Corp.,* 1995 WL 489711, at *7 (S.D.N.Y. Aug. 15, 1995)).  These factors favor abstention.

As discussed above, the bankruptcy estate is poised to close as evidenced by AML's Statement and the Bankruptcy Court's Order of Distribution, which counsels against exercising federal jurisdiction. *Kerusa*, 2004 WL 1048239, at * 4. The State Case is predominated by state law issues and they are not unusual, which favors state court. *Id.* at 5. Comity also favors abstention as the State Case involves state law claims only and is asserted against (amongst others) Defendant DWC, a New York entity, which agreed to the New York forum and has now contractually waived any objection due to Plaintiff's choice of state court. *Id.* All of the claims are non-core claims against and between non-debtor entities, none of which includes questions of bankruptcy law, which demonstrates the claims are not "related to" the Bankruptcy Case. *Id.* at 6. The jury trial factor is neutral as it is waived in state court by contract and unavailable in bankruptcy court. However, in light of the forum selection clause, the Plaintiff would be prejudiced by having this case removed from state court (and transferred to Delaware). *Id.* at 7 (denying Plaintiff choice of forum is prejudicial). Finally, as this is a non-core matter, any adjudication in the Bankruptcy Case would require additional work due to the objection process, which is inefficient and duplicates the parties' work, which also favors litigating in state court. *Id.* On balance, the permissive abstention factors strongly favor abstention, even if the State Case "arises in" the Bankruptcy Case, which it does not.

Accordingly, application of the abstention doctrine favors state court and warrants remand.

### E.    The Court should Award Plaintiff its Attorneys' Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The remand statute provides for fee shifting because "[t]he process of removing a case to federal court and

then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005) ("Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.").

A district court may award attorney's fees when the removing party lacked an objectively reasonable basis for seeking removal. *Id.* at 141   Findings of bad faith or frivolity are not required. *Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 923 (2d Cir. 1992). Instead, attorney's fees should be awarded if the removing party lacked an objectively reasonable basis for removal. *See Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (citing *Martin*, 546 U.S. 132 (2005)). If lack of jurisdiction is obvious from the face of the removal petition, than a plaintiff can establish that the defendants lacked an objectively reasonable basis for seeking removal. *Martin*, 546 U.S. at 141.

Here, review of the Defendants' removal petition demonstrates an obvious lack of jurisdiction.  The removal petition is largely predicated on facts and allegations ***not*** in Plaintiff's Complaint in the State Case, but in the Bankruptcy Case, which Defendants seem to rely on to support their argument for removal.  *Caterpillar,* 482 U.S. at 392.  Further, Defendants' four "arguments" to support removal are, at best, cursory and fail to even attempt to demonstrate how any of those bases actually establish federal court jurisdiction under § 1334(b).  Accordingly, the impropriety of removal was apparent and fees should be granted.  *See Shamoun v. Peerless Importers, Inc.*, No. 03 Civ. 1227 (NG), 2003 WL 21781954, *4 (E.D.N.Y. Aug 01, 2003) (No. 03 CV 1227(NG)) (awarding attorneys' fees where "the issues presented ... as a basis for removal jurisdiction are not novel" and the "impropriety of the removal [was] apparent");

*Greenidge v. Mundo Shipping Corp.,* 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999) (awarding attorneys' fees where the "impropriety of the removal should have been clear").

## CONCLUSION

For the foregoing reasons, the Court should remand this case to state court for lack of subject matter jurisdiction or, in the alternative, abstain from adjudicating this matter, and grant Plaintiff the costs and attorneys' fees incurred as a result of the improper removal of this action, as well as any other relief the Court deems just and proper.

Dated: New York, New York
     January 31, 2024

                 AKERMAN LLP


                 By: *  /s/ Darryl R. Graham  *
                      Darryl R. Graham
                      1251 Avenue of the Americas, 37th Floor
                      New York, New York 10020
                      Tel. No.: (212) 880-3800
                      E-Mail: darryl.graham@akerman.com

                      *Counsel for Plaintiff*