UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DILIGENT ENTERPRISE MANAGEMENT, LLC,

                     Plaintiff,

       - against -

AML GLOBAL ECLIPSE, LLC, DWC PINE
INVESTMENTS I, LTD., ALAN KLAPMEIER, JAMES
CARROLL, STEVE SERFLING, RJ SIEGLE, MIKE
WYSE, and CAROL LAROTONDA,

                     Defendants.

1:23-cv-10924-VEC

---

**MEMORANDUM OF LAW OF DEFENDANTS AML GLOBAL ECLIPSE, LLC, ALAN
KLAPMEIER, JAMES CARROLL, STEVE SERFLING, RJ SIEGLE, AND MIKE
WYSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND
AND IN SUPPORT OF THEIR CROSS-MOTION TO TRANSFER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

I.    Debtors' Bankruptcy Proceedings .....................................................................3

    A.    The Bankruptcy Case ...........................................................................3

    B.    The Delaware District Court Appeal .......................................................7

    C.    The Third Circuit Appeal ......................................................................8

    D.    The Bankruptcy Court-Approved Sale to AML Global Closes.............................8

    E.    Further Litigation in Bankruptcy Court ...................................................8

II.    The Instant Action......................................................................................9

ARGUMENT .......................................................................................................10

III.    Plaintiff's Claims Belong in Federal Bankruptcy Court............................................10

    A.    This Court Has "Arising In" Jurisdiction Over Plaintiff's Claims. .....................11

        1.    Plaintiff's Breach of Contract, Tortious Interference with Contract, and Civil Conspiracy Claims Implicate the Integrity of the Bankruptcy Process. .......................................................................12

        2.    Plaintiff's Fraud-Based Claims Are Extensions of the Bankruptcy Case Already Pending in the Delaware Bankruptcy Court. ..............................15

    B.    This Court Has "Related To" Jurisdiction Over Plaintiff's Claims. .....................16

    C.    Mandatory Abstention Does Not Apply and Permissive Abstention Is Not Appropriate. .......................................................................17

        1.    Mandatory Abstention Does Not Apply Because Plaintiff's Claims are Core............................................................................18

        2.    Even Assuming Mandatory Abstention Applied, It Is Not Warranted......18

        3.    Permissive Abstention is Disfavored and the Totality of the Factors Weigh Toward the Federal Courts Exercising Jurisdiction................................18

IV.    Plaintiff's Claims Belong in Delaware Bankruptcy Court and Should Be Transferred under 28 U.S.C. §§ 1404(a) and 1412. .................................................20

    A.    This Case Could Have Been Brought in the District of Delaware. .....................20

    B.    Transfer to Delaware is in the Interests of Convenience and Justice. .................22

        1.    Convenience of the Witnesses Favors Transfer.......................................22

        2.    Convenience of the Parties Favors Transfer. ...........................................22

        3.    Location of Relevant Documents and Relative Ease of Access to Sources of Proof Favors Transfer.................................................23

4.      Locus of Operative Facts Strongly Favors Transfer. ............................... 23

5.      Availability of Process to Compel Unwilling Witnesses Is Neutral. ......... 23

6.      Relative Means of the Parties Favors Transfer. ........................................ 23

7.      Forum's Familiarity with Governing Law Is Neutral. .............................. 24

8.      Weight Accorded to Plaintiff's Forum Choice is Minimal. ...................... 24

9.      Trial Efficiency and Interests of Justice Strongly Favors Transfer. ......... 24

V.      Plaintiff's Request for Fees and Costs Lacks Merit. ...........................................25

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*,
   2019 WL 140730 (S.D.N.Y. Jan. 9, 2019) ...............................................................16, 20, 21

*Baker v. Simpson*,
   613 F.3d 346 (2d Cir. 2010)....................................................................11, 12, 16, 18

*Bank of Am., N.A. v. Wilmington Tr. FSB*,
   943 F. Supp. 2d 417 (S.D.N.Y. 2013)....................................................................21

*In re Bernard L. Madoff Inv. Sec. LLC*,
   2023 WL 4744195 (S.D.N.Y. July 25, 2023) ........................................................15

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
   396 B.R. 602 (S.D.N.Y. 2008).......................................................................... 18-19

*Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*,
   2006 WL 846716 (S.D.N.Y. Mar. 29, 2006) ........................................................23

*In re Colony Hill Associates*,
    111 F.3d 269 (2d Cir. 1997)....................................................................................14

*In re Coudert Bros.*,
   2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ..................................................13 n.6

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir.1992)...............................................................................11, 17

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)......................................................................................20

*Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opps. Fund A, LP*,
   2020 WL 5814233 (S.D.N.Y. Sept. 30, 2020).......................................................19

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
   260 F. Supp. 3d 401 (S.D.N.Y. 2017)....................................................................22

*FameFlynet, Inc. v. Jasmine Enters., Inc.*,
   2017 WL 11715487 (S.D.N.Y. June 16, 2017) ................................................20, 24

*GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*,
   2019 WL 2008575 (S.D.N.Y. May 7, 2019) ..........................................................25

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
    565 B.R. 241 (S.D.N.Y. 2017)................................................................20

*Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*,
    2009 WL 2252116 (S.D.N.Y. July 28, 2009) ...............................................22, 23

*Jackson v. Avis Rent A Car Sys., LLC*,
    2015 WL 1004299 (S.D.N.Y. Mar. 6, 2015) ............................................22

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*,
    2004 WL 1048239 (S.D.N.Y. May 7, 2004) ..............................................21 n.8

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
    600 B.R. 214 (S.D.N.Y. 2019)...........................................12, 14, 16, 18

*In re Kirwan Offs. S.a.R.L.*,
    792 F. App'x 99 (2d Cir. 2019) ...............................................................15

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)................................................................13 n.5

*Krys v. Klejna*,
    658 F. App'x 1 (2d Cir. 2016) .................................................................18

*Krys v. Sugrue*,
    2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ................................................17, 18

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
    17 F. Supp. 3d 385 (S.D.N.Y. 2014)....................................................22

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
    487 B.R. 158 (Bankr. S.D.N.Y. 2013)...........................................*passim*

*In re Manville Forest Prods. Corp.*,
    896 F.2d 1384 (2d Cir. 1990).................................................................20

*MBNA Am. Bank, N.A. v. Hill*,
    436 F.3d 104 (2d Cir. 2006)............................................................. 10-11

*McGraw-Hill Cos. v. Jones*,
    2014 WL 988607 (S.D.N.Y. Mar. 12, 2014) ................................................23, 24

*In re Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016)............................................................11, 14

*ONE Aviation Corp.*, Case No. 18-12309 (Bankr. D. Del. Oct 09, 2018).......................................1

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011)................................................................11

*In re Petrie Retail, Inc.*,
    304 F.3d 223 (2d Cir. 2002)........................................................................12

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
    303 F. Supp. 2d 391 (S.D.N.Y. 2004)........................................................24

*Prospect Funding Holdings, LLC v. Vinson*,
    256 F. Supp. 3d 318 (S.D.N.Y. 2017).........................................................21

*In re Robert Plan Corp.*,
    777 F.3d 594 (2d Cir. 2015)........................................................................10

*Rosen v. Ritz-Carlton Hotel Co. LLC*,
    2015 WL 64736 (S.D.N.Y. Jan. 5, 2015) .............................................23, 25

*Scherillo v. Dun & Bradstreet, Inc.*,
    684 F. Supp. 2d 313 (S.D.N.Y. 2010)........................................................20

*Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*,
    2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) ......................................20, 24

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)........................................................................11

*In re Standard & Poor's Rating Agency Litig.*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014).......................................................13 n.5

*Stern v. Marshall*,
    564 U.S. 462 (2011)...................................................................13 n.6, 15 n.7

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017).......................................................................1, 13

*In re Tronox*,
    603 B.R. 712 (S.D.N.Y. 2019)...............................................................11, 14

*In re Turner*,
    724 F.2d 338 (2d Cir. 1983)........................................................................11

*In re U.S. Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999)....................................................................13 n.6

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015)...............................................................................15 n.7

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*,
    2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ...................................11, 14, 16, 18

*In re WorldCom, Inc. Sec. Litig.*,
  293 B.R. 308 (S.D.N.Y. 2003)............................................................................................19

**Statutes**

11 U.S.C. § 105....................................................................................................................17

11 U.S.C. § 157........................................................................................................15 n.7, 16

28 U.S.C. 1334..........................................................................................................1, 10, 11

28 U.S.C. § 1404..............................................................................................................20, 25

28 U.S.C. § 1409..............................................................................................................20, 21

28 U.S.C. § 1412..............................................................................................................20, 25

28 U.S.C. § 1452....................................................................................................................1, 10

Bankruptcy Code Chapter 7..................................................................................4, 8, 9, 17

Bankruptcy Code Chapter 11..................................................................................3, 4, 7, 8

Bankruptcy Code Section 363 .................................................................................. *passim*

Defendants AML Global Eclipse, LLC ("AML Global"), Alan Klapmeier, James Carroll, Steve Serfling, RJ Siegle, and Mike Wyse (the "Individual Defendants" and, together with AML Global, the "Moving Defendants") respectfully submit this memorandum of law in opposition to Plaintiff Diligent Enterprise Management, LLC's Motion to Remand to State Court and in support of Moving Defendants' Cross-Motion to Transfer.[1]

## PRELIMINARY STATEMENT

This dispute should be sent back to the United States Bankruptcy Court for the District of Delaware from which it arises. Since 2018, the Delaware Bankruptcy Court has administered the bankruptcy of ONE Aviation Corporation ("ONE Aviation"), *ONE Aviation Corp.*, Case No. 18-12309 (Bankr. D. Del. Oct 09, 2018). Citiking International US LLC ("Citiking")—a former creditor of ONE Aviation and the supposed predecessor-in-interest to the instant claims of Plaintiff Diligent Enterprise Management LLC ("Diligent")—actively participated in the bankruptcy case, and raised serial objections that the Delaware Bankruptcy Court overruled. Citiking unsuccessfully appealed those rulings to the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit. Diligent (represented by the same firm that represented Citiking) now seeks to recast those objections as state law claims to relitigate the ONE Aviation bankruptcy in New York State Court. This case is nothing more than a frivolous attempt "to plead around a bankruptcy," *In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017).

First, Diligent's motion to remand to state court should be denied. Defendants properly removed this lawsuit to federal court based on "arising in" and "related to" bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452. Diligent's state law claims are a transparent attempt to

---

[1] Plaintiff has agreed to dismiss Defendant Carol Larotonda from this action. ECF 20. Defendant DWC Pine Investments I, Ltd. ("DWC Pine") has not been properly served and therefore does not join this motion. However, DWC Pine has advised that it does not object to transferring this action to the District of Delaware. DWC Pine, together with Ms. Larotonda and Moving Defendants, are the "Defendants."

relitigate a valid sale order issued by the Delaware Bankruptcy Court authorizing the sale of ONE Aviation's assets pursuant to Section 363 of the Bankruptcy Code to AML Global, which made findings of fact and conclusions of law that Citiking unsuccessfully challenged on appeal. Diligent simply seeks to escape the Delaware Bankruptcy Court, which found several times that "*there was some inequitable conduct by Citiking*," Ex. 18 at 106:23-24, for a "do over" of challenges Citiking raised and lost in that court. Diligent's remand motion and this entire case are frivolous—sanctionably so.

Second, the Court should transfer this case back to the Delaware District Court, to be referred to the Delaware Bankruptcy Court. Plaintiff cannot dispute—and indeed, concedes—that its claims are premised upon and arise from events that occurred *in Delaware*: "the bankruptcy and asset sale and purchase of One Aviation Corp." Ex. 40 ("Summons") at 2. In fact, all of the underlying challenged conduct relates to orders entered by the Delaware Bankruptcy Court. The presumption that claims related to bankruptcy proceedings—like Plaintiff's claims here—belong in the District where the bankruptcy case is pending creates a strong, if not conclusive, presumption favoring transfer back to Delaware. The principles of convenience and justice also favor Delaware: Diligent is not at home in New York (nor are *any* of the defendants) and none of the challenged conduct took place in New York (it happened in Delaware). This action belongs in Delaware.

Citiking and its successor, Diligent, may disagree with the treatment of their claims by the Delaware Bankruptcy Court, the Delaware District Court and the Third Circuit, but they cannot bat them aside under the guise of state law claims in New York. Accordingly, we respectfully submit that Diligent's Motion to Remand should be denied and the case transferred back to the United States District Court for the District of Delaware, where the case will be dismissed and other appropriate relief in favor of the Defendants can be entered.

## STATEMENT OF FACTS

### I.   DEBTORS' BANKRUPTCY PROCEEDINGS

#### A.    The Bankruptcy Case

On October 9, 2018, ONE Aviation and its affiliates ("Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in Delaware Bankruptcy Court (the "Bankruptcy Case"). *See* Ex. 1.[2] The next day, Debtors filed a Joint Prepackaged Plan of Reorganization for ONE Aviation and Its Debtor Affiliates (the "Plan"). Ex. 2. After eight months with no forward progress, on June 17, 2019, Debtors moved the Delaware Bankruptcy Court for authorization to sell Debtors' assets to Debtors' pre-petition senior lender, Citiking. Ex. 3.

That sale motion did not come to fruition. Instead, Citiking and another pre-petition senior lender to Debtors, defendant DWC Pine, entered into a letter agreement dated July 25, 2019 (the "Letter Agreement") that provided, in relevant part, "It is the intention of Buyer [Citiking] and Seller [DWC Pine] that the Company [Debtors] shall withdraw its pending Motion to Sell under Section 363 of the Bankruptcy Code … and, in its place, file a plan of reorganization that will incorporate" provisions enumerated in the Letter Agreement. Ex. 44 § 5. Debtors withdrew the sale motion on July 26, 2019, Ex. 4, and filed an amended Plan on August 30, 2019, Ex. 5. The Delaware Bankruptcy Court confirmed the amended Plan on September 18, 2019. Ex. 6.

The Plan contemplated that Citiking would own 100% of the reorganized Debtors upon emergence from bankruptcy. However, the Plan and Letter Agreement required Citiking ***to fund various settlements and distributions***; reach exit financing agreements with other parties involved

---

[2] References to "Ex. __" refer to the exhibits attached to the Declaration of Michael C. Keats in Support of Defendants AML Global Eclipse, LLC, Alan Klapmeier, James Carroll, Steve Serfling, RJ Siegle, and Mike Wyse's Opposition to Plaintiff's Motion for Remand and in Support of Their Cross-Motion to Transfer filed simultaneously herewith.

All citations, internal quotations, and alterations are omitted unless otherwise noted. Emphasis is added in bold italics and alternations are in brackets.

in the bankruptcy case; provide exit financing funding; and take the Plan effective by December 1, 2019. Ex. 44 § 5(i)-(v); Ex. 5 at §§ 2.2(b), 9.1. As the Official Committee of Unsecured Creditors told the Delaware Bankruptcy Court in May 2020, "the Chapter 11 Cases have been plagued by delay, disputes, and funding issues," including Citiking leveraging the Plan effective date to negotiate fee concessions and failing to finalize the necessary exit financing. Ex. 7 at ¶¶ 13, 21; *see also* Ex. 10 ¶¶ 16-17. Ultimately, Citiking failed to fully fund the settlements and distributions; refused to engage or cooperate in exit financing discussions; and did not provide any exit financing. As a result, due entirely to Citiking's repeated failures to comply with the Plan, it failed.

By August 2020, Debtors' financial position had deteriorated further and Citiking "finally admitted … that it [could] not meet its funding obligations under the Plan to go effective." Ex. 10 ¶¶ 18, 24. In an effort to stave off a value-destructive chapter 7 liquidation, on August 28, 2020, Debtors filed an emergency motion with the Delaware Bankruptcy Court for authorization to seek alternative funding, Ex. 8, and a motion for authorization to initiate a sale process with SEF OA LLC ("SE Falcon"), Ex. 9. The Delaware Bankruptcy Court presided over a two-day evidentiary hearing on the emergency funding and sale motions. *See* Exs. 13, 14. On the first day of the hearing, witnesses offered testimony on matters relating to the administration of the bankrupt estate, the use of cash collateral, the effort to exit bankruptcy, and related topics, including:

- Mr. Carroll, as an Independent Director of Debtors, testified that "[t]here was disagreement [with Citiking] on the budget … Citiking was looking to have each and every position within the company justified, and they were looking at reducing some of the labor force to try to save money," Ex. 14 at 68:5-9;

- Mr. Huan Wang, Citiking's Secretary, testified and alleged that Debtors' "senior management [] invaded into that [$1.7 million unsecured creditor settlement fund] account and misappropriated those funds for other purposes," Ex. 14 at 124:18-24; 130:10-14; *see also id.* at 187:6-8;

- Mr. Wang testified Citiking asked Debtors for financial records on "the inventory purchases ... [but] those were never provided," Ex. 14 at 135:13-18; *see also id.* at

156:2-18 (Wang testimony regarding Citiking questions over inventory costs); *id.* at 166:13-19 (same); and

- Mr. Carroll, Mr. Wang, and a DWC Pine representative, Robert Clark, all testified about the Letter Agreement between Citiking and DWC Pine and the impact of that agreement on those creditors' relative priority. *See* Ex. 14 at 90:11-15, 94:25-95:11 (Carroll); 103:9-104:4 (Clark); 148:16-149:13 (Wang). Mr. Clark also testified to the impact of a July 10, 2018 Continuing Obligations Agreement between DWC Pine and Citiking. *Id.* at 101:7-16, 102:5-18.

During oral argument, Citiking urged the Delaware Bankruptcy Court to deny Debtors' emergency funding and sale motions. Citiking's central theme was that Debtors were seeking to "destroy" and "punish" Citiking because "[f]or some reason they just want to get rid of Citiking." Ex. 13 at 28:7-11, 31:12-13. The Delaware Bankruptcy Court disagreed, finding, "this is a ***problem of Citiking's own making*** and I think the debtors have been extraordinarily patient." *Id.* at 37:10-12. The Delaware Bankruptcy Court further found "***Citiking has insufficient cash to close, [and] they are unwilling to close … There is no path forward with Citiking.***" *Id.* at 38:1-6.[3] The Delaware Bankruptcy Court granted Debtors' motion to initiate a sale process and entered an interim order granting the emergency funding motion ("Interim DIP Order"). Exs. 11, 12. Citiking moved to vacate the Interim DIP Order. Ex. 16. The Delaware Bankruptcy Court granted the motion in part and denied it in part, observing, "***there was some inequitable conduct by Citiking***. … [I]t became clear probably at least nine months ago … that this thing was never going to close and that the case should pivot in some way to a different resolution." Ex. 18 at 106:22-107:04.

The sale to SE Falcon collapsed when that entity failed to meet its obligations, and Debtors by necessity continued to market their assets to potential purchasers. Ex. 15 ¶¶ 1-2. On October 20, 2020, Debtors and AML Global entered into an Asset Purchase Agreement through which

---

[3] The Delaware Bankruptcy Court further found it was "appropriate here to, in effect, void the final DIP order [that granted Citiking certain protections] because of Citiking's own inequitable conduct," and, "based on the inequities of this case caused by Citiking," that Citiking was equitably subordinated to DWC Pine, Ex. 13 at 39:16-18, 40:4-7. *But see* Ex. 18 at 108:23-25 (Delaware Bankruptcy Court vacating equitable subordination portion of its ruling).

AML Global would acquire substantially all of Debtors' assets related to the Eclipse light jet aircraft program. *Id.* The same day, Debtors filed a motion seeking the Delaware Bankruptcy Court's approval for a sale to AML Global or any bidder that submitted a higher and better offer (the "Sale Motion"). *Id.* Citiking objected. Ex. 17.

On November 20, 2020, the Delaware Bankruptcy Court held a hearing on the Sale Motion. Ex. 20. At the hearing, counsel for DWC Pine informed the Delaware Bankruptcy Court that DWC Pine had agreed to sell its interest in Debtors' debt to AML Global. *See id.* at 14:14-25. Citiking objected to the Sale Motion, among other reasons, because: (i) Citiking was "entitled to have the opportunity to credit bid" under Section 363(f) of the Code, *id.* at 33:22-34:1, and (ii) the sale was "the result of an insufficient process" because, Citiking alleged, the marketing and auction process was not robust enough, *id.* at 34:2-36:17. The Delaware Bankruptcy Court "***overrul[ed] all the objections***" to the sale. *Id.* at 51:16-17. The Delaware Bankruptcy Court found that the sale satisfied Section 363(f) of the Code; the sale process was sufficient; a formal auction with bid procedures was not required by the Code; and Debtors "simply didn't have the time or the money to do anything more." *Id.* at 48:10-49:24.

On November 20, 2020, the Delaware Bankruptcy Court entered an order approving the sale to AML Global (the "Sale Order"). Ex. 19. In the Sale Order, the Delaware Bankruptcy Court "found, concluded, and determined," *inter alia*, that:

- "The terms contained in the Purchase Agreement constitute the highest or otherwise best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' bankruptcy estates for the Purchased Assets than would be provided by any other available alternative." Ex. 19 ¶ P.

- "The Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Purchased Assets. No higher or otherwise better offer was submitted to the Debtors to purchase the Purchased Assets for greater economic value to the Debtors' bankruptcy estates than provided by the Buyer pursuant to the Purchase Agreement." Ex. 19 ¶ Q.

- "[T]he Purchase Agreement and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their respective bankruptcy estates and creditors and other parties in interest in these Chapter 11 Cases." Ex. 19 ¶ R.

- "The Buyer is purchasing the Purchased Assets in good faith, is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code … in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; … (iv) the Buyer agreed to provisions in the Purchase Agreement that would enable the Debtors to accept a higher or better offer in respect of the Sale; and (v) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms' length and in good faith." Ex. 19 ¶ S.

- "None of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale or the assumption and assignment of any Assigned Contracts, is being undertaken for the purpose of hindering, delaying, or defrauding any creditors under the Bankruptcy Code, under the laws of the United States, or under the laws of any state, territory, possession, or the District of Columbia." Ex. 19 ¶ V.

The Delaware Bankruptcy Court further "ordered, adjudged, and decreed," in the Sale Order, *inter alia*, that:

- "As a good-faith purchaser of the Purchased Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code." Ex. 19 ¶ 45.

- "This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement … ***and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale***." Ex. 19 ¶ 59.

The Delaware Bankruptcy Court stayed the Sale Order until November 27, 2020 to afford

Citiking an opportunity to appeal. *See* Ex. 20 at 51:19-21.

### B.    The Delaware District Court Appeal

On November 23, 2020, Citiking filed a notice of appeal from the Sale Order, Ex. 33, and

emergency motion to stay the Sale Order pending the appeal in the District of Delaware, Ex. 34.

Citiking argued in its emergency stay motion that the "sales process was fundamentally flawed"

and again complained it was deprived of its purported right to credit bid. *Id.* ¶¶ 1-2, 29. Citiking reiterated these arguments during an emergency stay motion hearing before the Delaware District Court on November 24, 2020. *See* Ex. 36 at 17:2-18, 17:22-19:18. The District Court declined to hear argument from the other parties and denied Citiking's emergency stay motion. *Id.* at 30:9-11.

### C.      The Third Circuit Appeal

Citiking filed a notice of appeal and an emergency stay motion in the Third Circuit on November 25, 2020. Exs. 36, 37. Citiking again argued that its "[f]undamental rights" were at stake, including its claimed "right to credit bid up to the face amount of its debt to re-take its collateral and protect itself from an undervalue sale[.]" Ex. 37 at 2. The Third Circuit issued an Order on November 27, 2020 summarily denying Citiking's emergency motion. Ex. 38.

### D.      The Bankruptcy Court-Approved Sale to AML Global Closes

The sale to AML Global closed on November 30, 2020. Ex. 21. AML Global made a cash payment to Debtors totaling $5,250,000 (subject to adjustments), assumed over 200 of Debtors' contracts and leases, and paid over $1,400,000 in cure costs. Ex. 24 ¶ 17. Citiking stipulated to the voluntary dismissal of its Third Circuit appeal, Ex. 39, and its Delaware District Court appeal was dismissed for failure to prosecute, Ex 35. On February 18, 2021, the Delaware Bankruptcy Court converted Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Ex. 22.

### E.      Further Litigation in Bankruptcy Court

In July 2021, Citiking objected "to the allowance of any claim asserted by AML Global" against Debtors or their estates. Ex. 23. Citiking argued, *inter alia*, that (i) AML Global and DWC Pine "scheme[d]" to "lock in AML as the successful bidder" and "deprive Citiking of its right to credit bid," *id.* ¶¶ 2-3; (ii) "DW's unilateral sale of its secured debt position to AML violated Citiking's right of first refusal under the Intercreditor Agreement," *id.* ¶ 8; and (iii) DWC Pine's November 20, 2020 disclosure to the Delaware Bankruptcy Court regarding the sale of its interest

in Debtors' debt to AML Global "raises questions concerning the integrity and transparency of the Sale process," *id.* ¶ 23. As Debtors' Chapter 7 Trustee observed, Citiking's "apparent purpose [in] filing the Citiking Claim Objection is to collaterally attack the Sale Order in circumvention of the appeal process." Ex. 25 ¶ 3; *see also* Ex. 24 (AML Global's response to Citiking's "procedurally improper collateral attack on the Sale Order based on a groundless conspiracy theory").

Citiking adjourned the objection in September 2021, Ex. 26, but raised it anew in March 2022 in opposition to a distribution settlement reached by the Chapter 7 Trustee, AML Global, and others interested in the Bankruptcy Case, Ex. 28. On February 25, 2022, the Bankruptcy Case was reassigned to the Honorable J. Kate Stickles. Ex. 27. On June 22, 2023, an attorney from Akerman LLP (the same firm as Diligent's counsel here) noticed an appearance as Citiking's counsel, Ex. 29, and Citiking purportedly assigned its standing to bring the instant claims to Diligent, Ex. 41 ("Compl.") ¶ 1. The next day, the Chapter 7 Trustee, AML Global, Citiking, and other interested parties reached a settlement on distributions. *See* Exs. 30, 31. As noted in the Delaware Bankruptcy Court's signed order, Citiking withdrew its March 2022 objection "in exchange for an agreed distribution in the amount of $950,000." Ex. 31 at 2.

The Bankruptcy Case remains pending in the Delaware Bankruptcy Court before Judge Stickles, who has been notified of the pendency of this lawsuit. Ex. 32.

## II.    THE INSTANT ACTION

Plaintiff filed the complaint in this action in New York state court on November 17, 2023 (the "Complaint") asserting claims against AML Global, a company incorporated in Delaware; DWC Pine, a company incorporated in the Cayman Islands; Mr. Klapmeier, a Wisconsin resident; Mr. Carroll, a Florida resident; Mr. Serfling, a Minnesota resident; Mr. Siegle, a Wisconsin resident; Mr. Wyse, a New Jersey resident; and Ms. Larotonda, a New Mexico resident. *See* Compl. ¶¶ 2-9. Plaintiff admits this action raises "breach of contract, tortious interference, civil

conspiracy and breach of fiduciary duty" claims "relating to the defendants' [allegedly] wrongful and deceptive conduct **with respect to the bankruptcy and asset sale and purchase of One Aviation Corp.**" Summons at 2. The thrust of the Complaint is that AML and DWC Pine colluded and conspired, and DWC Pine breached contracts, "to effectively freeze Citiking out of the bidding process by eliminating the opportunity to credit bid," *see* Compl. ¶¶ 96-119; and Individual Defendants made supposedly fraudulent statements concerning core bankruptcy functions in connection with the ONE Aviation bankruptcy proceedings in Delaware, *see id.* ¶¶ 120-146.[4]

On December 15, 2023, Defendants removed the action to this Court pursuant to "arising in" and "related to" bankruptcy jurisdiction, 28 U.S.C. §§ 1334 and 1452. ECF 1. Defendants stated in the removal notice that, "[g]iven the Delaware Bankruptcy Court's familiarity with the events underlying the Removed Action, Defendants will seek to transfer the Removed Action to the District of Delaware[.]" *Id.* ¶ 26. On January 31, 2024, Plaintiff moved to remand this action to New York state court. ECF 16 ("Pl.'s Mot.").

## ARGUMENT

### III.   PLAINTIFF'S CLAIMS BELONG IN FEDERAL BANKRUPTCY COURT.

"A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. §] 1334." 28 U.S.C. § 1452(a). Under § 1334, district courts are vested with original jurisdiction over "all civil proceedings **arising under** title 11, or **arising in** or **related to** cases under title 11." 28 U.S.C. § 1334(b). "Proceedings 'arising under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law,'" *In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir. 2015) (quoting *MBNA Am. Bank,*

---

[4] The Complaint does not attribute any statements to Ms. Larotonda and, accordingly, Plaintiff has agreed to dismiss Ms. Larotonda from this action. ECF 20.

*N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006)), whereas "'arising in' jurisdiction includes claims that 'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy,'" *In re Motors Liquidation Co.*, 829 F.3d 135, 153 (2d Cir. 2016) (quoting *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)). The sweep of "related to" jurisdiction is "fairly capacious," *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018), and reaches where "there is 'a significant connection' between the action and the underlying bankruptcy," *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) (Lynch, J.) (quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)), or the "outcome might have any 'conceivable effect' on the bankrupt estate," *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992)).

The Court has "arising in" and "related to" jurisdiction over Diligent's claims.

### A.    This Court Has "Arising In" Jurisdiction Over Plaintiff's Claims.

A claim or cause of action that "implicates the integrity of the entire bankruptcy process" comfortably sits within the bankruptcy court's "arising in" jurisdiction. *See Baker*, 613 F.3d at 349, 351. This flows from the bankruptcy court's well-established "interest in policing the integrity of the bankruptcy process in general, and of the sales of estate assets under the court's supervision in particular." *Winstar*, 2007 WL 4323003, at *5. It is "textbook" law that the integrity of the bankruptcy process is implicated (and "arising in" jurisdiction is triggered) by clams that "functionally challenge the outcomes of bankruptcy cases" or "question whether orders entered in bankruptcy cases were proper or were instead the result of misconduct[.]" *In re Tronox*, 603 B.R. 712, 721 (S.D.N.Y. 2019) (Wiles, J.), *subsequently aff'd sub nom. In re Tronox Inc.*, 2022 WL 16753119 (2d Cir. Nov. 8, 2022). Here, Plaintiff attempts to avoid the findings made and orders

issued by the Delaware Bankruptcy Court by collaterally raising misconduct allegations sounding in state law that directly implicate the integrity of the entire bankruptcy and sale processes.

A plaintiff cannot escape "arising in" jurisdiction by raising only state law claims or strategically omitting the debtor. *E.g.*, *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 162-63 (S.D.N.Y. 2013) (Marrero, J.) (finding "arising in" jurisdiction where "claims [were] rooted in common law and name[d] only non-debtors as defendants"). Plaintiff has clearly attempted to engage in such gamesmanship here—the Complaint omits Debtors as defendants, but launches a clear collateral attack on Debtors' actions during and in connection with the Bankruptcy Case by naming the Individual Defendants (all members of Debtors' senior management and/or Board) and raising allegations against them that arise from the Bankruptcy Case. This omission is glaring from even a casual review of the Complaint: the very first paragraph of the Complaint's "factual background" is a description of ONE Aviation. *See* Compl. ¶ 14.

But, to no avail, as the "determinative" question "is whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker*, 613 F.3d at 350. A claim is an extension of a bankruptcy proceeding if it is "unique to or uniquely affected by the bankruptcy proceedings," "directly affect[s] a core bankruptcy function," *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 227 (S.D.N.Y. 2019) (Abrams, J.) (quoting *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002)), is based on rights established in a sale order, involves the interpretation of the bankruptcy court's orders, or was already before the bankruptcy court. *See Lothian Cassidy*, 487 B.R. at 162 (citing *Petrie*, 304 F.3d at 229–31).

1.   <u>Plaintiff's Breach of Contract, Tortious Interference with Contract, and Civil Conspiracy Claims Implicate the Integrity of the Bankruptcy Process.</u>

Diligent reasserts in this Court allegations and arguments that have been heard, considered, and rejected by the Delaware Bankruptcy Court, the Delaware District Court, and the Third Circuit.

Citiking fully litigated and lost on its allegations that the sales process for Debtors' assets was deficient and supposedly vitiated Citiking's right under bankruptcy law to credit bid. The Delaware Bankruptcy Court approved the Sale Order. Ex. 19.[5] The Delaware Bankruptcy Court specifically "found, concluded, and determined" that AML Global was a good faith buyer with the best offer and the transaction was not "undertaken for the purpose of hindering, delaying, or defrauding any creditors[.]" Ex. 19 ¶¶ P-S, V. The Delaware Bankruptcy Court further "ordered, adjudged, and decreed" that AML Global did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets[.]" *Id.* ¶ 45. Citiking appealed—and neither the Delaware District Court nor the Third Circuit disturbed the Sale Order. *See* Exs. 33-39.

Now—in an apparent attempt "to plead around a bankruptcy," *In re Tronox Inc.*, 855 F.3d at 100—Plaintiff seeks to relitigate the Sale Order through the guise of state law breach of contract,[6] tortious interference, and civil conspiracy claims in New York State Court. Plaintiff alleges that AML Global and DWC Pine, "with the assistance and cooperation of the D&O Defendants," engaged in a shadowy "multi-layer conspiracy" that purportedly breached three contracts and led to the formation of some vague "undisclosed[] side deal" aimed at eliminating Citiking's right to credit bid (on assets Citiking could have bought at any time in the preceding nearly two years) and securing for AML Global some of Debtors' assets "for pennies on the

---

[5] The Court may take judicial notice of the filings made in the Bankruptcy Case and related appeals. *See In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014) (Furman, J.) ("consideration of extrinsic materials and documents of which judicial notice may be taken is permissible" when "determining whether jurisdiction exists"); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (explaining "courts routinely take judicial notice of documents filed in other courts … to establish the fact of such litigation and related filings.").

[6] Diligent wrongly argues that "contracts [] formed pre-petition [] cannot as a matter of law 'arise in' the Bankruptcy Case." Pl.'s Mot. at 11 (citing *In re Coudert Bros.*, 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011), and *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)). The Second Circuit actually found in *U.S. Lines*—which Diligent relies on for this proposition—that pre-petition insurance contracts "render[ed] the proceedings core" due to "the impact these contracts have on other core bankruptcy functions[.]" 197 F.3d at 638; *see also Stern v. Marshall*, 564 U.S. 462, 476 (2011) (cases "arising under" and "arising in" the Bankruptcy Code are "core" proceedings). The critical inquiry is the nature of the contract and its impact on core bankruptcy functions.

dollar[.]" Compl. ¶¶ 81-86. Plaintiff's collusion allegations are not only outlandish, but directly contrary to, and impossible to square with, the bankruptcy court-approved Sale Order. Indeed, this is precisely the type of conduct the Second Circuit said in *In re Colony Hill Associates* "would call into question the 'intrinsic fairness' of the sale hearing." 111 F.3d 269, 274 (2d Cir. 1997) (collusion between bidder and creditor to block participation of highest bidder implicates intrinsic fairness). Diligent agrees. *See* Ex. 23 ¶ 23 (Citiking arguing DWC Pine debt sale to AML Global "raises questions concerning the integrity and transparency of the Sale process"). Accordingly, there is no doubt or dispute that Plaintiff's breach of contract, tortious interference, and civil conspiracy claims are a collateral attack on the Sale Order and "functionally challenge the outcomes of" the Bankruptcy Case. *Tronox*, 603 B.R. at 721. This goes directly to the integrity of the bankruptcy process, and thus establishes "arising in" jurisdiction over these claims.

There are independent grounds to find "arising in" jurisdiction over Plaintiff's breach of contract, tortious interference, and civil conspiracy claims:

- *First*, these claims at bottom concern the propriety of an order for the sale of a debtor's property, which implicates a bankruptcy court's prototypical "arising in" jurisdiction. *See Motors Liquidation.*, 829 F.3d at 153.

- *Second*, these claims indirectly and directly complain that Citiking was purportedly unable to credit bid. The right to credit bid is created by bankruptcy law and only arises in the context of a bankruptcy asset sale. These claims, thus, are unique to bankruptcy proceedings and uniquely affected by any bankruptcy court orders that may impact credit bidding. *See* 11 U.S.C. § 363(k); *KeyBank*, 600 B.R. at 229.

- *Third*, Citiking already submitted its sales process and credit bid objections to the Delaware Bankruptcy Court, which made rulings on those issues. As Judge Marrero observed in *Lothian Cassidy*, the existence of "arising in" jurisdiction is reinforced where there are prior rulings from the bankruptcy court on the same "subject matter at issue in" the state law case. 487 B.R. at 163.

- *Fourth*, the Delaware Bankruptcy Court signaled its "keen interest in the resolution of disputes relating to the sale of [Debtors'] assets," *Winstar*, 2007 WL 4323003, at *5, by including in the Sale Order a provision "retain[ing] jurisdiction to, among other things … adjudicate, if necessary, any and all disputes ***concerning or relating in any way to the Sale***." Ex. 19 ¶ 59.

- *Fifth*, Plaintiff "voluntarily presented these claims to the bankruptcy court" in July 2021 (*see supra*, Section I.E) and cannot now rescind its consent to adjudication. *In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99, 103-04 (2d Cir. 2019) (presenting claims to bankruptcy court and later objecting to that court's jurisdiction raises "gamesmanship" concerns and "establishes implicit consent"); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 4744195, at *4 (S.D.N.Y. July 25, 2023) (Caproni, J.) ("defendant impliedly consents to adjudication by a bankruptcy court by choosing to litigate for many years in that court").[7]

There are, thus, ample bases to exercise "arising in" jurisdiction over Plaintiff's breach of contract, tortious interference, and civil conspiracy claims.

2.    Plaintiff's Fraud-Based Claims Are Extensions of the Bankruptcy Case Already Pending in the Delaware Bankruptcy Court.

Diligent asserts the Individuals Defendants made material misrepresentations concerning quintessential bankruptcy topics, including: (i) Debtors' restructuring budget, (ii) funding requests from a debtor-in-possession to its bankruptcy court-approved lender, (iii) a pool of funds earmarked to satisfy unsecured creditors' claims upon a reorganization plan going effective, (iv) prioritization of vendors, personnel, and future business opportunities in connection with planning for post-reorganization, and (v) the potential sale of bankruptcy debtors' assets. *See* Compl. ¶¶ 50-54, 120-146. Specifically, the Complaint alleges the Individual Defendants were "integral in obtaining the DIP Loan from Citiking, including negotiating the terms and documentation of the DIP loan, preparing the restructuring budget related to the use of the DIP Loan," prescribing what should be included in the DIP Loan, and the treatment of those funds. *See* Compl. ¶¶ 50-54. As such, according to Count VI, the Individual Defendants allegedly fraudulently induced Citiking to provide funding in the Bankruptcy Case. *See* Compl. ¶¶ 120-130. Further, Counts VII, VIII, and

---

[7] Plaintiff argues that the Supreme Court's *Stern* decision bars removal to the Delaware Bankruptcy Court. *See* Pl.'s Mot. at 14. That is wrong as a matter of law—*Stern* "did 'not change all that much' about the division of labor between district courts and bankruptcy courts," *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 682 (2015), and certainly did not purport to divest bankruptcy courts of jurisdiction over "relating to" cases. *See* 11 U.S.C. § 157(c)(1) (bankruptcy court can hear non-core proceeding and "shall submit proposed findings of fact and conclusions of law to the district court"). There is no *Stern* issue here: (i) Plaintiff's claims are all "arising in" bankruptcy, and (ii) as to the subset of claims advanced in Citiking's July 2021 objection, Plaintiff consented to bankruptcy court jurisdiction.

IX assert fraudulent inducement and misrepresentation claims against certain of the Individual Defendants on the grounds that their actions to "successfully reorganize" Debtors were fraudulent and their statements to Citiking were allegedly made to induce Citiking to fund millions into the Bankruptcy Case and provide for opportunities post-bankruptcy. *See* Compl. ¶¶ 131-146.

These topics "are uniquely affected by a core bankruptcy function because they are based on rights that were established in an order to obtain credit and to use cash collateral," and the sale of a debtor's property, which are all "the result of a core bankruptcy proceeding." *KeyBank*, 600 B.R. at 227; *see* 11 U.S.C. § 157(b)(2)(D), (M), (N). Accordingly, it is plain that Diligent asserts fraud claims on matters inextricably intertwined with and "extension[s] of the proceedings already before the bankruptcy court." *Baker*, 613 F.3d at 350.

Moreover, the Delaware Bankruptcy Court has already heard live testimony, considered argument, and issued orders in light of such testimony and argument on the same subject matter that forms the basis of Plaintiff's fraud allegations. *See Lothian Cassidy*, 487 B.R. at 163 (prior rulings from the bankruptcy court on the same "subject matter at issue in" the state case supports finding "arising in" jurisdiction). Indeed, every allegation advanced in Counts VI and VII of the Complaint were already testified to and/or argued in the Bankruptcy Case. *See supra*, Section I.A.

In sum, the Court has "arising in" jurisdiction over Plaintiff's fraud-based claims.

### B.    This Court Has "Related To" Jurisdiction Over Plaintiff's Claims.

There are at least two ways in which the instant case may possibly affect the Bankruptcy Case. *Winstar*, 2007 WL 4323003, at *1 n.1 ("relating to" jurisdiction exists does not require certainty or likelihood, only the "possib[ility] that the proceeding may affect" the bankrupt estate). *First*, Plaintiff's claims against the Individual Defendants triggered an indemnification right. *See Argosy Cap. Grp. III, L.P. v. Triangle Cap. Corp.*, 2019 WL 140730, at *6 (S.D.N.Y. Jan. 9, 2019) (Ramos, J.) (indemnification right confers "related to" jurisdiction). *Second*, if Diligent prevails in

its collateral attack on the Sale Order, it is conceivably (though remotely) possible the Bankruptcy Court may unwind the Sale Order pursuant to its equitable powers under 11 U.S.C. § 105(a).

Further, the significant connection between the instant action and the Bankruptcy Case is clear. *See Cuyahoga*, 980 F.2d at 114 ("any significant connection" sufficient to establish "related to" jurisdiction). The Complaint dedicates 45 out of 75 "factual background" paragraphs exclusively to the Bankruptcy Case. *See* Compl. ¶¶ 45-46 (initiation of bankruptcy proceedings), ¶¶ 47-54 (debtor-in-possession financing approved by Delaware Bankruptcy Court), ¶¶ 55-71 (sale motions filed with and/or ruled on by Delaware Bankruptcy Court), ¶¶ 72-86 (disclosure to Delaware Bankruptcy Court), ¶¶ 87-89 (chapter 7 conversion). The other factual background paragraphs describe contracts between Citiking and DWC Pine, many of which are inextricably intertwined with the Bankruptcy Case. The Letter Agreement, for example, prescribed the withdrawal of the 2019 sale motion and contained a series of provisions for incorporation into Debtors' amended Plan (which the Delaware Bankruptcy Court approved on September 18, 2019). *See* Exs. 6, 44; *see also* Ex. 18 at 89:10-92:21 (Citiking arguing Continuing Obligations Agreement and Intercreditor Agreement issues to Delaware Bankruptcy Court); *supra*, Section I.E (Citiking asserting right of first refusal argument in objection filed in Bankruptcy Case).

Finally, Diligent characterizes its own claims as "***relating to*** … the bankruptcy and asset sale and purchase of One Aviation Corp." Summons at 2. There is, thus, no genuine dispute that Diligent's claims are "related to" the Bankruptcy Case.

### C.  Mandatory Abstention Does Not Apply and Permissive Abstention Is Not Appropriate.

Neither mandatory nor permissive abstention (or equitable remand) are required, warranted, or appropriate here. *See Krys v. Sugrue*, 2008 WL 4700920, at *10 n.14 (S.D.N.Y. Oct. 23, 2008) (Lynch, J.) (equitable remand analysis "essentially the same as" permissive abstention).

1.    <u>Mandatory Abstention Does Not Apply Because Plaintiff's Claims are Core.</u>

Cases "arising under" and "arising in" the Bankruptcy Code are "core" proceedings over which "the bankruptcy court has comprehensive power and may enter appropriate orders and judgments." *Baker*, 613 F.3d at 352. The mandatory abstention doctrine does not apply to core proceedings and, thus, "by its own terms does not apply" here. *Winstar*, 2007 WL 4323003, at *5.

2.    <u>Even Assuming Mandatory Abstention Applied, It Is Not Warranted.</u>

"A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *Sugrue*, 2008 WL 4700920, at *9. Diligent cannot prove the "timely adjudication" prong of the mandatory abstention analysis because "when the facts in a case are especially complex, the forum with greater familiarity with the record may [] be expected to adjudicate the matter more quickly." *Krys v. Klejna*, 658 F. App'x 1, 3 (2d Cir. 2016) (affirming abstention not mandatory where claims did "not raise any novel legal questions, and the relevant state law was well-established"). The state law relevant to this action is "well-established" and does "not raise any novel legal questions," whereas the factual background has developed over the course of many years. Judge Stickles has overseen the Bankruptcy Case for more than two years and therefore has "greater familiarity with the record." *Id.* Further, in the highly unlikely but conceivably possible event Diligent succeeds in its collateral attack on the Sale Order, the Delaware Bankruptcy Court will be the forum best-positioned to consider whether to unwind the Sale Order. Thus, assuming for the sake of argument Diligent's claims only satisfied "related to" jurisdiction, the Court should nonetheless deny mandatory abstention and grant Moving Defendant's transfer motion.

3.    <u>Permissive Abstention is Disfavored and the Totality of the Factors Weigh Toward the Federal Courts Exercising Jurisdiction.</u>

Diligent bears the burden to overcome the presumption against permissive abstention. *See KeyBank*, 600 B.R. at 233; *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,

396 B.R. 602, 607 (S.D.N.Y. 2008) (Rakoff, J.). Whether permissive abstention is appropriate turns on principles of "comity and federalism, judicial economy, and efficiency." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (Cote, J.) (listing twelve factors to guide permissive abstention analysis). These principles weigh against abstention here.

Comity does not demand abstention because Diligent's state law claims "are not novel or complex" and the state court "invested little or no time" on the case before it was removed. *Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opps. Fund A, LP*, 2020 WL 5814233, at *12 (S.D.N.Y. Sept. 30, 2020) (Abrams, J.) (fraud and civil conspiracy). Judicial economy and efficiency are served by declining abstention (and granting transfer) because Diligent's claims arise from core bankruptcy proceedings (including orders to obtain credit and approve the sale of property), and bankruptcy issues (including the propriety and interpretation of the Delaware Bankruptcy Court's prior orders) will predominate over state law issues. Further, as noted, Judge Stickles has presided over the Bankruptcy Case for more than two years and, therefore, is the most familiar with the record.

The specter of forum shopping also weighs against abstention. Diligent seeks to decamp to New York State Court allegations that were raised years ago by Citiking in Delaware Bankruptcy Court. Citiking purportedly assigned its standing to bring the instant claims to Diligent (an entity incorporated in the same state as AML Global) on June 22, 2023—the same day an attorney from Akerman LLP (the same firm representing Diligent) noticed an appearance on behalf of Citiking in the Bankruptcy Case. *Compare* Compl. ¶ 1, *with* Ex. 29. These circumstances suggest Diligent is a mere proxy for Citiking (a suspicion Diligent reinforces in footnote one of its memorandum) and was incorporated in Delaware to frustrate diversity jurisdiction in a suit against AML Global.

In sum, permissive abstention is not appropriate in this case and the proper forum to adjudicate Diligent's claims is the Delaware Bankruptcy Court.

## IV.   PLAINTIFF'S CLAIMS BELONG IN DELAWARE BANKRUPTCY COURT AND SHOULD BE TRANSFERRED UNDER 28 U.S.C. §§ 1404(a) AND 1412.

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The standard for transfer under § 1412 is "substantially the same" as the transfer analysis under 28 U.S.C. § 1404, *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 256-57 (S.D.N.Y. 2017) (Woods, J.), with the caveat that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district," *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, 2013 WL 5798986, at *3 (S.D.N.Y. Oct. 22, 2013) (Forrest, J.). The movant's burden under § 1412 is also lightened to a preponderance of the evidence standard. *Argosy*, 2019 WL 140730, at *5.

Courts have wide discretion to determine whether transfer under § 1404(a) is appropriate. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (extending § 1404(a) rules to § 1412). The § 1404(a) inquiry is two-pronged. *FameFlynet, Inc. v. Jasmine Enters.*, *Inc.*, 2017 WL 11715487, at *1 (S.D.N.Y. June 16, 2017) (Caproni, J.). First, the movant must establish that the action could have been brought in the proposed forum. *Id.* Second, the movant must show "transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 317 (S.D.N.Y. 2010) (Bianco, J.). Moving Defendants satisfy both factors.

### A.   This Case Could Have Been Brought in the District of Delaware.

A "proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such [title 11] case is pending." 28 U.S.C. § 1409(a); *see*

*Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 427 (S.D.N.Y. 2013) (Marrero, J.) (transferring "related to" case that, pursuant to § 1409(a), could have been brought in transferee forum). Accordingly, this "arising in" and "related to" case, *see supra,* Section III, properly could have been brought in the Delaware District Court where the Bankruptcy Case remains pending.

The existence of forum selection clauses in contracts between Citiking and DWC Pine do not dictate a different result. As an initial matter, forum selection clauses are not strictly enforced where (like here) they clash with "the public interest in centralizing bankruptcy proceedings[.]" *See Argosy*, 2019 WL 140730, at *5.[8] Further, Diligent fails to confront the basic fact that *none* of the defendants presently in the case signed the relevant contracts. While Plaintiff attempts to bring AML Global into the ambit of the clauses, *see* Pl.'s Mot. at 15, this tactic fails. AML Global did not sign *any* of the relevant contracts; was not involved in negotiating or drafting the contracts; did not assume any obligations under the contracts; and received no benefit from the contracts. *See Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 325-26 (S.D.N.Y. 2017) (Ramos, J.) (declining to enforce forum selection clause against non-signatory that "played no role in the funding transactions" and "did not take on any obligations under the Agreements"). Diligent similarly asserts "the forum selection clauses require that **this action** be remanded to state court," Pl.'s Mot. at 16, but offers *no* argument on why its claims against the Individual Defendants should be governed by forum selection clauses contained in agreements the Individual Defendants did not sign. There is simply no basis to force Moving Defendants to litigate in New York.

---

[8] Diligent inaptly relies on *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239, at *7 (S.D.N.Y. May 7, 2004) (Lynch, J.), to support its argument that "in light of the forum selection clause, the Plaintiff would be prejudiced by having this case removed from state court (and transferred to Delaware)." Pl.'s Mot. at 19. But *Kerusa* had nothing to do with a forum selection clause, and the court's prejudice finding was entirely grounded in the fact that (i) all the parties were "local to New York," and (ii) the actions were filed and "all of the relevant events took place" in New York. 2004 WL 1048239, at *7. Here, none of the parties are local to New York and all the relevant events took place in Delaware. Transfer would work no prejudice to Diligent.

**B.      Transfer to Delaware is in the Interests of Convenience and Justice.**

Courts assess nine factors to determine whether transfer under § 1404(a) is in the interests of convenience and justice. *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401 (S.D.N.Y. 2017) (Engelmayer, J.) (listing factors). These factors favor transfer.

1.      <u>Convenience of the Witnesses Favors Transfer.</u>

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Jackson v. Avis Rent A Car Sys., LLC*, 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015) (Stanton, J.). However, "the convenience of witnesses who are located outside both the current and transferee forums" is not relevant to the analysis. *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, 2009 WL 2252116, at *4 (S.D.N.Y. July 28, 2009) (Gardephe, J.). None of the relevant events occurred in New York; they all took place in Delaware. *See supra*, Section I. Therefore, to the extent there are non-party witnesses, they are more likely to be located in Delaware. This factor weighs in favor of transfer.

2.      <u>Convenience of the Parties Favors Transfer.</u>

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) (Koeltl, J.). Here, transfer to Delaware would be more convenient for Diligent and AML Global, which are both incorporated in Delaware and where Diligent admits it has offices. *See* Compl. ¶¶ 1-2. The convenience to the other parties is neutral, as the Individual Defendants reside all across the country and travel to Delaware is comparable to New York. Therefore, this factor favors transfer.

3.      Location of Relevant Documents and Relative Ease of Access to Sources of
         Proof Favors Transfer.

This factor "is entitled to relatively little weight in the modern era of faxing, scanning, and emailing documents." *McGraw-Hill Cos. v. Jones*, 2014 WL 988607, at *9 (S.D.N.Y. Mar. 12, 2014) (Nathan, J.). Nevertheless, because the challenged conduct arises from the Bankruptcy Case in Delaware, the relevant documents and evidence are more likely to be found in Delaware than New York. This factor favors transfer.

4.      Locus of Operative Facts Strongly Favors Transfer.

The locus of operative facts, that is, "the site of the events from which the claim arises," *Ivy Soc'y Sports Grp.,* 2009 WL 2252116, at *6, "is a primary factor in determining a § 1404(a) motion to transfer," *Rosen v. Ritz-Carlton Hotel Co. LLC*, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (Sullivan, J.). Plaintiff's claims all arise in and are related to the ONE Aviation bankruptcy proceedings in the Delaware Bankruptcy Court. *See supra*, Section III; *see also* Summons at 2. This factor leans strongly in favor of transfer.

5.      Availability of Process to Compel Unwilling Witnesses Is Neutral.

Moving Defendants presently are not aware of any witness that would be unwilling to testify voluntarily. This factor is neutral. *See Rosen*, 2015 WL 64736, at *4 ("availability of process to compel testimony is irrelevant to the transfer analysis" where parties do not assert "witness will be unwilling to testify voluntarily").

6.      Relative Means of the Parties Favors Transfer.

"[W]here disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, 2006 WL 846716, at *5 (S.D.N.Y. Mar. 29, 2006) (Batts, J.). The Individual Defendants (natural persons) would be financially disadvantaged relative to Diligent (a

corporate entity) by litigating in New York because (i) none of the Individual Defendants are domiciled in New York; and (ii) the events relevant to the claims against them have *no* connection to New York. This factor weighs in favor of transfer.

7.      Forum's Familiarity with Governing Law Is Neutral.

This factor is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) (Leisure, J.). As noted *supra*, Section III.C., Diligent's claims do not implicate "any complex or novel issues of New York law." Accordingly, this factor is neutral. *Id.*

8.      Weight Accorded to Plaintiff's Forum Choice is Minimal.

Plaintiff's chosen forum "is ordinarily entitled to deference," however, "[t]he degree of deference" is measurably diminished "where the forum selected is not the plaintiff's home forum or the place where the operative facts of the action occurred[.]" *FameFlynet*, 2017 WL 11715487, at *2-3; *McGraw-Hill*, 2014 WL 988607, at *7. Diligent's choice of forum is entitled to minimal deference because it is a resident of Delaware, not New York, and the locus of operative facts is Delaware (indeed, the Delaware Bankruptcy Court). This factor weighs in favor of transfer.

9.      Trial Efficiency and Interests of Justice Strongly Favors Transfer.

"[T]he existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy; it can be decisive." *McGraw-Hill*, 2014 WL 988607, at *10; *see Lothian Cassidy*, 487 B.R. at 167 (explaining "where a bankruptcy proceeding involves a substantial learning curve transfer pursuant to 28 U.S.C. § 1412 is appropriate"); *see also Smartmatic*, 2013 WL 5798986, at *3 (presumption in favor of forum where related bankruptcy proceedings are pending). Diligent's claims arise in and are related to bankruptcy proceedings that have been pending in Delaware Bankruptcy Court for more than five years. *See supra*, Section I.

The Delaware Bankruptcy Court clearly has "the most meaningful connection to the facts underlying this case," *Rosen*, 2015 WL 64736, at *5, and transfer would serve the interest of judicial economy and the interests of justice.

The § 1404(a) factors favor transfer. Moving Defendants therefore respectfully request this Court transfer the action to the District of Delaware pursuant to 28 U.S.C. §§ 1404(a) and 1412.

## V.   PLAINTIFF'S REQUEST FOR FEES AND COSTS LACKS MERIT.

"Section 1447(c) allows a court discretion to grant costs and fees in two circumstances: where subject matter [jurisdiction] is lacking and where there is a defect in the removal." *GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*, 2019 WL 2008575, at *9 (S.D.N.Y. May 7, 2019) (Caproni, J.). Neither circumstance obtains here. Diligent's request should be summarily denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Moving Defendants respectfully request that this Court deny Plaintiff's Motion to Remand to State Court, grant Moving Defendants' Cross-Motion to Transfer, and transfer this action to the District of Delaware.

Dated:   New York, New York
         February 27, 2024

BAKER & HOSTETLER LLP
DANIEL J. BUZZETTA
ERICA BARROW
MICHAEL A. SABELLA
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
dbuzzetta@bakerlaw.com
ebarrow@bakerlaw.com
msabella@bakerlaw.com

*Counsel for Defendants Alan Klapmeier,*
*James Carroll, Steve Serfling, RJ Siegle,*
*and Mike Wyse*

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By:   _____/s/ *Michael C. Keats*_____
         Michael C. Keats
         Peter B. Siroka

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
michael.keats@friedfrank.com
peter.siroka@friedfrank.com

Attorneys for Defendant
  AML Global Eclipse, LLC